# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

---

Gretchen Martini

**On behalf of herself and
all others similarly situated,**

      **Plaintiffs**

      **v.**

Case No. _____

**Bicycle Health, Inc.
Bicycle Health Medical Group, P.A.
Ankit Gupta**

      **Defendants.**

---

## COMPLAINT

---

Plaintiff, by her attorneys, for her Complaint against Defendants states as follows:

1.      This is an individual and collective action under the Fair Labor Standards Act against all defendants, as well as an individual action under Wisconsin law against Defendants Bicycle Health Inc. and Bicycle Health Medical Group P.A. (Combined "Corporate Defendants") to recover overtime wages owed to Plaintiff. Defendants failed to pay to Plaintiff all overtime pay required by the FLSA and Wisconsin law both by misclassifying her as an exempt employee, and by failing to give her credit for all her hours worked. Defendants additionally violated the FLSA by reducing Plaintiff's hours, resulting in a diminution of her compensation, in retaliation for her filing for arbitration pursuant to the FLSA.

### JURISDICTION AND VENUE

2.      This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq; as well as

1

supplemental jurisdiction over the Plaintiff's claims that arise under Wisconsin law, given that the Wisconsin law claim challenges the same misclassification and undercounting of work hours as her FLSA claim.

3.      This Court has personal jurisdiction over Corporate Defendants pursuant to Rule 4(k)(1)(a) of the Federal Rules of Civil Procedure because by employing persons working in Wisconsin, and by soliciting applications from employees to work remotely in Wisconsin and/or with prospective patients and clients in Wisconsin, Defendants became subject to the jurisdiction of a court of general jurisdiction in Wisconsin.

4.      The Court has personal jurisdiction over Defendant Ankit Gupta because Defendant Gupta caused the corporate Defendants to have contact with Wisconsin by hiring remote workers in Wisconsin, by soliciting employment applications from Wisconsin residents, and by causing the corporate Defendants to work with patients and telemedicine providers in Wisconsin. Defendant Gupta was involved in setting up Defendants system of compensation for their employees including Plaintiff, so that his contacts with the State of Wisconsin were responsible for causing Plaintiff's injuries.

5.      Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantially portion of the events that give rise to Plaintiff's claim, specifically her performance of work for Defendants and her receipt of compensation that fell short of the FLSA's requirements occurred in Wisconsin. Venue in this Court is also appropriate because the arbitration provision contained in Plaintiff's offer of employment is unenforceable as unconscionable, because Plaintiff through her actual transportation and delivery of forms through channels of interstate commerce is not subject to the Federal Arbitration Act, and because Wisconsin would refuse to sever the arbitration provision from other unlawful provisions of her

2

offer of employment, so that it would regard her entire offer of employment including the arbitration provision as unenforceable. Additionally, venue is proper as to the claims against Individual Defendant Gupta because the arbitration provision in Plaintiff's offer of employment does not apply to disputes between Plaintiff and Defendant Gupta.

## THE PARTIES

6.     Named Plaintiff Gretchen Martini was employed by Defendants as a Patient Intake Coordinator by Defendants. Upon information and belief Plaintiff also may have been reclassified into the position of Enrollment Coordinator. Both as a Patient Intake Coordinator and as an Enrollment Coordinator Plaintiff was responsible for working with prospective patients, and to make connections between patients or prospective patients and telemedicine providers. To perform her work Plaintiff frequently delivered forms, such as Intake Forms and Release of Information forms, through the channels of interstate commerce. Plaintiff's FLSA consent form is being filed with the Court at the same time this Complaint is being filed with the Court.

7.     Bicycle Health Inc. is a Delaware corporation that facilitates the provision of largely telemedicine care for patients with opioid use disorders. Upon information and belief Bicycle Health Inc. is a remotely operated company so that it does not have a principal place of business. Bicycle Health Inc.is both the employer listed on Plaintiff's offer of employment; and the entity who appeared as Plaintiff's employer on her paychecks.

8.     Bicycle Health Medical Group P.A. is a Florida corporation. Upon information and belief Bicycle Health Medical Group is a remotely operated company so that it does not have a principal place of business. The operations of Bicycle Health Inc. and Bicycle Health Medical Group P.A. are sufficiently integrated, in that the two entities share common ownership,

3

management, and control over human resources, and provided integrated services to their jointly shared patients, so that the Corporate Defendants combine to form a single employer.

9.     Ankit Gupta is the founder of both corporate Defendants, and in that capacity is directly involved in the day to day operations of both corporate Defendants, including setting up the policies that both Defendants utilized to compensate their employees, including Patient Intake Coordinators like Named Plaintiff.

10.    Both Corporate Defendants are employers within the meaning of Wis. Stat.§109.03(1). At all relevant times between December of 2019 to the present, Bicycle Health Inc. has had annual gross volume of sales of not less than $500,000.

11.    During each year between its date of incorporation in 2020 and the present, Bicycle Health Medical Group P.A. has had annual gross volume of sales of not less than $500,000.

## FACTS

12.    Even though Plaintiff's offer of employment misclassified her as an exempt employee, Plaintiff's work duties always directly related to healthcare related services that Defendants provided to their customers and telemedicine providers, rather than related to the management or general business operations of Defendants.

13.    To perform her work as a Patient Intake Coordinator and/or Enrollment Coordinator for Defendants Plaintiff needed to have strong communication skills and relevant work experience, rather than knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction.

14.    As a Patient Intake Coordinator and/or Enrollment Coordinator, Plaintiff's primary job responsibility consisted of providing services to the Defendants' patients and clients,

4

rather than managing the Defendants' enterprise. In both positions Plaintiff was not routinely responsible for directing the work of any other employees.

15. Throughout the time that Plaintiff worked for Defendants, she did so remotely by using a computer that was provided by Defendants.

16. Plaintiff's work required her, during each day of her work, to regularly use her computer that was provided by Defendants. Plaintiff needed to wake up and log onto her computer so that she could have access to the computer that she needed to perform her work for Defendants.

17. At the beginning of each of her workdays, Plaintiff was required to punch in using timekeeping software that was only available on her computer that was provided by Defendants. Plaintiff did not have the option to report her start and end times to Defendants other than through the timekeeping software on her company provided computer.

18. During each day Plaintiff had to wake up her computer, log in, and wait for her computer to finish loading before she could access the timekeeping software to punch in. Even when the computer was running well Plaintiff needed at least 3-5 minutes between when she woke up her computer, and when she was able to punch in on the timekeeping software.

19. At the end of her workday Plaintiff was required by Defendants to either turn off, or to log off her computer.

20. Upon information and belief, Defendants required their remote based employees to either turn off, or log off their computers, which was company property, at the end of each workday to protect the computers from unauthorized use and damage; and so that the computers could receive the updates needed to ensure their maximum performance.

5

21.     Even when the computer was running well, Plaintiff needed several minutes between the time when she punched out using the time tracking program, and when she was able to log out of or turn off her computer.

22.     Counting the time between when she first woke up her computer in the morning until the time when she turned off or logged off her computer at the end of the workday, Plaintiff regularly worked more than 40 hours per week even after deducting time that she spent on bona fide meal breaks.

23.     During the biweekly time periods during which Plaintiff worked more than 80 hours, her check stubs showed that she was paid for 80 hours worked at $20.43 per hour, with no additional overtime premium pay for her hours worked over 40 hours per week.

24.     If Plaintiff missed work during a week because of absences that she previously alerted the Defendants to and received permission for, she was strongly encouraged by Defendants to make up the hours that she missed.

25.     If Plaintiff was unable to make up for the missed work time, Defendants would make deductions from Plaintiff's accrued sick leave and vacation time to make up for the missed time. If Plaintiff did not have a sufficient amount of accrued sick leave and vacation accrued to cover all of her hours worked, she would receive pay at $20.43 per hour for fewer than 80 hours during the biweekly period.

26.     Defendants frequently paid to Plaintiff a biweekly wage of $20.43 per hour for fewer than 80 hours even though her absences both were excused; and were not the result of disciplinary suspensions.

27.     Defendants never told Plaintiff that her biweekly compensation was intended to compensate her for all of her hours worked during a biweekly time period, rather than for 80

6

hours worked during a biweekly time period.

28.     Because Plaintiff's biweekly compensation was reduced when her total hours worked, accrued sick leave and accrued vacations were fewer than 80 hours, Plaintiff had no basis to believe, and did not believe that her salary was intended to compensate her for all of her hours worked each week, rather than for 80 hours worked during each biweekly period.

29.     Plaintiff has never received from Defendants overtime pay on top of her biweekly compensation for no more than 80 hours worked during each biweekly period.

30.     In November of 2021, because she was operating under the mistaken impression that the arbitration provision contained in her signed offer of employment was enforceable, and because she was not aware of her option of filing against Defendant Gupta individually for wages owed to her under the FLSA, Plaintiff filed for arbitration against Defendants to recover overtime wages that were owed to her.  That arbitration proceeding has since been dismissed without prejudice.

31.     Before Defendants became aware of Plaintiff's arbitration filing, they permitted Plaintiff to return to work following excused partial day absences.

32.     Once Defendants were aware of Plaintiff' filing for arbitration under the FLSA against the Corporate Defendants, they retaliated against Plaintiff by requiring her to take the rest of the day off following her excused partial day absences; even while they continued to permit other employees to return to work and accumulate additional hours worked following their partial day absences.

33.     Plaintiff suffered a salary reduction of at least 40 hours at $20.43 per hour, because she was willing to, but Defendants did not allow her to return to work following excused partial day absences.

7

## COLLECTIVE ACTION ALLEGATIONS

34.     Plaintiff brings her First Claim for Relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all non-exempt remote employees of Defendants who were subject to Defendants' uniform policy that treated when they logged in on timekeeping software rather than when they woke up their computers as the beginning of their compensable workdays; and treated when they logged out on timekeeping software rather than when they turned off or logged off their computers as the end of their compensable workdays.

35.     Plaintiff additionally brings her first claim for relief, pursuant to the Fair Labor Standards Act, on her own behalf and on behalf of all other Patient Intake Coordinators and Enrollment Coordinators employed by Defendants whom Defendants misclassified as exempt, resulting in them receiving no compensation for their hours worked over 40 each week.

36.     Plaintiff, just like the members of the proposed collectives that she seeks to represent, cannot waive her statutory right under the FLSA to participate in collective actions. A collective action is appropriate in that the proposed members of the collective are similarly situated so that the Court can uniformly determine when remote workers' workdays began and ended; as well as whether Patient Intake Coordinators are exempt from the overtime pay requirements of the FLSA. The Court can similarly uniformly determine whether Defendant Gupta was a FLSA employer of the corporate defendants' non-exempt employees.

37.     The claims of Plaintiff are representative of the claims of members of the proposed collective action in that she, just like all members of the proposed collective action, suffered a loss of overtime pay because she was employed as Patient Intake Coordinator and was misclassified as exempt; and/or because Defendants failed to count as hours worked her time between when she woke up her computer and when she punched in on timekeeping software;

8

and the time between when she punched out on the timekeeping software and when she turned off or logged off her computer.

## COUNT I.    CLAIM FOR UNPAID OVERTIME PAY UNDER THE FLSA.

38.    Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-37 of the Complaint.

39.    Plaintiff did not fall within the administrative, executive, or professional exemptions, or any other exemptions cognizable under the FLSA while she worked for Defendants as a Patient Intake Coordinator and/or Enrollment Coordinator; so that she was eligible for overtime pay whenever she worked more than 40 hours per week.

40.    Because Plaintiff needed to frequently utilize her computer while performing work for Defendants, her work activity of waking up and logging onto her computer was integral and indispensable to her work as a Patient Intake Coordinator and/or Enrollment Coordinator.

41.    Because Defendants required Plaintiff to log out or turn off her computer at the end of the day to prevent unauthorized access to the computer, and to enable the computer, which was the main tool of Plaintiff's work, to operate at its optimal possible efficiency, Plaintiff's time spent turning off or logging out of her computer was similarly integral and indispensable to her work as a Patient Intake Coordinator and/or Enrollment Coordinator.

42.    Pursuant to the Continuous workday rule, Plaintiff therefore was entitled to be paid between the time when she woke up her computer at the beginning of her shift until the time that she turned off or logged out of her computer at the end of her shift, with the exception of time deductions for bona fide meal periods.

43.    Plaintiff's biweekly salary was intended to compensate her for 80 hours worked every two weeks, given that Plaintiff's salary was regularly and frequently reduced because she

9

worked fewer than 80 hours during biweekly time periods, even though her absences were not the results of either willful absences or lateness in arriving at work; or disciplinary suspensions.

44.     Plaintiff therefore was entitled to an additional 1.5 times her equivalent hourly wage of $20.43 per hour for each of her actual hours worked over 40 per week.

45.     Defendants retaliated against the Plaintiff's assertion of her rights under the FLSA by prohibiting her from returning to work following partial day absences, even though it had previously permitted her, and continued to permit other employees to return to work following partial day absences.

46.     Plaintiff suffered a reduction of pay as a result of Defendants retaliated against her for her assertion of rights under the FLSA.  Plaintiff is entitled to an award of all wages that she lost because of Defendants retaliating against her for asserting her rights under the FLSA.

47.     Plaintiff is automatically entitled to 100% liquidated damages for her wages lost because of Defendants' retaliating against her in violation of the FLSA, given that 29 U.S.C. §260 only gives the Court discretion to reduce the award of liquidated damages for claims of unpaid minimum wages, overtime pay, and liquidated damages.

48.     Because Defendants had no reasonable grounds for believing either that the Patient Intake Coordinator position was exempt under the FLSA, or that it could disregard Plaintiff's work time before she punched in and after she punched out of the timekeeping software, Plaintiff is entitled to 100% liquidated damages on all overtime wages owed to her.

49.     Upon information and belief, at all relevant times Defendants were generally aware that the FLSA required them to compensate non-exempt employees for all their actual hours worked over 40 per week; yet failed to make any attempt to investigate whether their classification of Patient Intake Coordinators and/or Enrollment Coordinators and their rules for

10

determining their remote workers' hours worked complied with the FLSA. Defendants thereby demonstrated their reckless disregard for the requirements of the FLSA, so that members of the proposed collectives are entitled to a three years statute of limitations on their claims.

50. Plaintiff is additionally entitled to her reasonable attorneys' fees incurred in prosecuting this first cause of action.

51. Defendant Gupta was Plaintiff's employer in that he was intimately involved in the daily day operations of Corporate Defendants' business, and because he was responsible for setting the timekeeping and misclassification policies that resulted in Plaintiff losing overtime wages that she was entitled to under the FLSA. Defendant Gupta therefore should be held jointly and severally liable, along with the Corporate Defendants, for all overtime pay, liquidated damages, and attorneys' fees and costs owed to Plaintiff on her overtime pay claims.

**COUNT II: CLAIM FOR UNPAID WAGES BROUGHT PURSUANT TO §109.03(5).**

52. Plaintiff re-alleges, and incorporates by reference, the allegations contained in paragraphs 1-50 of the Complaint.

53. Throughout the course of her employment for Defendants, Plaintiff was never an exempt worker within the meaning of DWD §274.04.

54. Plaintiff's work of waking up and logging onto her computer was physical and/or mental exertion required by the Corporate defendants and was pursued for Defendants' benefit in that she could not perform her work for Defendants without first waking up and logging onto her computer.

55. Plaintiff's work of logging out of her computer was physical or mental exertion required by the Corporate Defendants and was pursued for Defendants' benefit by both

11

preventing unauthorized access to and ensuring the optimal operation of her computer that was the property of the Defendants.

56.     Plaintiff's work of waking up, logging on, and either turning off or logging off her computer therefore was an integral and indispensable part of her principal work for Defendants, so that Corporate Defendants violated Wisconsin law by treating when Plaintiff punched in and punched out on timekeeping software, rather than the earlier time when she woke up her computer and the later time when she turned off or logged of her computer as the beginning and ending points of her compensable workdays.

57.     Under DWD §274.03 Plaintiff is entitled to time and a half the regular rate for all of her actual hours worked over 40 per week.

58.     Plaintiff has never agreed to be paid the same salary for fluctuating hours worked, in that Plaintiff's salary was reduced if she worked fewer than 80 hours during a biweekly period, and she did not have sick leave or vacation to make up for the hours.

59.     Because Plaintiff's salary was intended to compensate her for 40 hours worked each week, rather than all of her hours worked each week, Plaintiff is entitled to one and a half times her regular rate of $20.63 for each of her overtime hours worked.

60.     Plaintiff is entitled to file suit under Wis. Stat. §109.03(5) to recover all overtime pay that corporate defendants were required by the Wisconsin Administrative Code to pay her and failed to do so within 31 days of when the work that earned the overtime wages was performed.

61.     Pursuant to Wis. Stat. §109.03(6) and §109.11(2), Plaintiff is also entitled to recover 50% liquidated damages on all overtime wages that corporate defendants owe to her, plus her attorneys' fees and costs incurred in prosecuting this count of the Complaint.

12

WHEREFORE, the Plaintiff respectfully request the Court to enter an order that:

a.　　　Finds that all Defendants are jointly and severally liable to her, along with all members of the proposed collective action, for all overtime wages and liquidated damages owed to her, along with her attorneys' fees and costs incurred in prosecuting the FLSA claims;

b.　　　Finds that the Corporate Defendants are jointly and severally liable to her for all wages that she lost because they retaliated against her in violation of the FLSA, plus an equal amount as liquidate damages, plus her attorneys' fees and costs incurred in prosecuting her FLSA retaliation claim;

c.　　　Finds that Corporate Defendants are similarly liable to her for all overtime wages owed to her under Wisconsin law, plus 50% liquidated damages and her attorneys' fees and costs incurred in prosecuting her Wisconsin wage claims; and that said liquidated damages and attorneys' fees are not subject to offset by her recoveries under the FLSA; and

d.　　　Grants to her such further relief as the Court deems just and proper.

Dated this 14th day of December, 2022.

/s/Yingtao Ho
Yingtao Ho (SBN: 1045418)
Email: yh@previant.com
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI　53203
Telephone: 414-271-4500
Fax: 414-271-6308

13

Consent to Opt In and
Participate as a Named Plaintiff in Suit for
Violations of Fair Labor Standards Act

I, Gretchen Martini, hereby consents to participate in the lawsuit against Bicycle Health Inc. and Bicycle Health Medical Group, P.A., along with their owners and managing agents ("Employer") under the Fair Labor Standards Act, 29 U.S.C. §201 *et seq*. This written consent is intended to serve as my consent in writing to join in this lawsuit and become a party plaintiff as required by 29 U.S.C. § 216(b).

During the last two years, Employer has both failed to pay to me all overtime pay required by the Fair Labor Standards Act; and retaliated against me for asserting my rights under the FLSA, so that I am consenting to join in a lawsuit to recover overtime wages, attorneys' fees and costs against Employer.

By signing and returning this consent to sue, I understand that I will be represented by The Previant Law Firm, s.c.

Dated: _____12/8/22_____

Signed:_____Gretchen Martini_____