# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

GRETCHEN MARTINI,

                Plaintiff,

v.

BICYCLE HEALTH INC., BICYCLE HEALTH MEDICAL GROUP PA, and ANKIT GUPTA,

                Defendants.

Case No. 22-CV-1509-JPS

**ORDER**

      On January 20, 2023, Defendants Bicycle Health Inc. and Bicycle Health Medical Group PA (the "Bicycle Defendants") filed a motion to compel arbitration and to either dismiss or stay Plaintiff Gretchen Martini's ("Plaintiff") complaint pending completion of arbitration. ECF No. 13. This motion is now fully briefed, and for the reasons stated below, the Court will grant the motion to compel arbitration and will dismiss the action without prejudice.[1]

---

[1] Plaintiff additionally filed a motion to strike Defendants' reply or, alternatively, to allow Plaintiff to file a sur-reply. ECF No. 26 at 1. Therein, Plaintiff asserts that Defendants raised for the first time in their reply brief the theories of third-party beneficiary, agency, and estoppel and that Plaintiff accordingly had no opportunity to respond to them. *Id.* at 2–3.

      But Defendants raised these theories in their brief in support. *See* ECF No. 14 at 16 ("*Arthur Andersen v. Carlisle,* 556 U.S. 624 (2009) ('Because traditional principles of state law allow a contract to be enforced by or against non-parties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel, a holding that non-parties to a contract are categorically barred from § 3 relief is in error.'). Under the theory of agency, an agent can assume the protection of the

1.  **BACKGROUND**

This action arises from Plaintiff's employment with the Bicycle Defendants. ECF No. 1. She alleges that she is owed overtime wages because Defendants "misclassif[ied] her as an exempt employee" and "fail[ed] to give her credit for all her hours worked." *Id.* at 1. She additionally alleges that Defendants reduced her hours in retaliation for her "filing for arbitration pursuant to the FLSA." *Id*. She brings her "First Claim for Relief, pursuant to the Fair Labor Standards Act" on both her own behalf and on behalf of "all non-exempt remote employees of Defendants" who were subject to the same treatment as Plaintiff. *Id*. at 8.

Plaintiff began her employment for the Bicycle Defendants as a Patient Intake Coordinator. *Id.* at 3. Her employer, Bicycle Health Inc., is a Delaware corporation that "facilitates the provision of largely telemedicine care for patients with opioid use disorders." *Id*. Prior to beginning her employment, the Bicycle Defendants sent a formal offer of employment, dated May 29, 2021, to Plaintiff. *See generally* ECF No. 16-1; ECF No. 15 at 2. That document included an "Arbitration and Class Action Waiver" section. ECF No. 16-1 at 2. That section heading is both bolded and underlined. It provides the following:

> You and the Company agree to submit to mandatory binding arbitration, governed by the Federal Arbitration Act (the "FAA"), any and all claims arising out of or related to your employment with the Company and the termination thereof,

---

contract which the principal has signed. *See Arnold*, 920 F.2d at 1281."); *id*. at 16–17 (noting that Plaintiff's complaint alleged an agency relationship between Gupta and Bicycle Health Inc. and arguing that the complaint "plainly supports the principal-agent relationship"). And in any event, Defendants were entitled to address them to the extent that they were discussed further in Plaintiff's response. The Court will deny Plaintiff's motion.

> except that each party may, at its, his or her option, seek injunctive relief in court related to the improper use, disclosure or misappropriation of a party's private, proprietary, confidential or trade secret information ("Arbitrable Claims"). Further, to the fullest extent permitted by law, you and the Company agree that no class or collective actions can be asserted in arbitration or otherwise. All claims, whether in arbitration or otherwise, must be brought solely in your or the Company's individual capacity, and not as a plaintiff or class member in any purported class or collective proceeding. **Nothing in this Arbitration and Class Action Waiver section, however, restricts your right to pursue claims in court for any alleged discrimination, harassment, or retaliation arising under the Illinois Human Rights Act, Title VII, or any state or federal anti-discrimination law.**

*Id*. The document continues to read, in all caps:

> SUBJECT TO THE ABOVE PROVISO, THE PARTIES HEREBY WAIVE ANY RIGHTS THEY MAY HAVE TO TRIAL BY JURY IN REGARD TO ARBITRABLE CLAIMS. THE PARTIES FURTHER WAIVE ANY RIGHTS THEY MAY HAVE TO PURSUE OR PARTICIPATE IN A CLASS OR COLLECTIVE ACTION PERTAINING TO ANY CLAIMS BETWEEN YOU AND THE COMPANY.

*Id*. The Arbitration and Class Action Waiver section concludes with the following:

> This agreement to arbitrate does not restrict your right to file administrative claims you may bring before any government agency where, as a matter of law, the parties may not restrict the employee's ability to file such claims (including, but not limited to, the National Labor Relations Board, the Equal Employment Opportunity Commission and the Department of Labor). However, the parties agree that, to the fullest extent permitted by law, arbitration shall be the exclusive remedy for the subject matter of such administrative claims. The arbitration shall be conducted in Woodstock, Illinois through JAMS before a single neutral arbitrator, in accordance with the JAMS employment arbitration rules then in effect,

provided however, that the FAA, including its procedural provisions for compelling arbitration, shall govern and apply to this arbitration agreement. The JAMS rules may be found and reviewed at http://www.jamsadr.com/rules-employment-arbitration. If you are unable to access these rules, please let me know and I will provide you with a hardcopy. The arbitrator shall issue a written decision that contains the essential findings and conclusions on which the decision is based. If, for any reason, any term of this Arbitration and Class Action Waiver provision is held to be invalid or unenforceable, all other valid terms and conditions herein shall be severable in nature, and remain fully enforceable.

*Id.* (hyperlink removed). On the last page, the document provided that the "offer will remain open until 06/03/2021" and instructed Plaintiff to "sign the enclosed copy of this letter" and "return it" to accept the offer. *Id.* at 3. It stated further that Plaintiff's "signature [would] acknowledge that [she] ha[s] read and understood and agreed to the terms and conditions of" the offer letter and any attached documents. *Id*. The document is signed by Ankit Gupta, CEO. *Id*. Also on the last page of the document appear Gretchen Martini's name, a signature, May 30, 2021 as the date of signing, and the following attestation: "I have read and understood this offer letter and hereby acknowledge, accept and agree to the terms as set forth above and further acknowledge that no other commitments were made to me as part of my employment offer except as specifically set forth herein." *Id*.; s*ee also* ECF No. 15 at 4 ("Plaintiff signed the Offer Letter, represented that she signed the Offer Letter on May 30, 2021, and returned the signed Offer Letter to BHI.").[2]

---

[2]The filing at ECF No. 15 is entitled "Facts Governing the Bicycle Health Defendants' Motion to Compel Arbitration and Dismiss Plaintiff's Complaint or, in the Alternative, Stay All Proceedings." These facts are provided pursuant to the

At the time that Plaintiff signed and returned the offer letter, she "was a resident of the State of Illinois." ECF No. 15 at 4. At some later time, she moved to Wisconsin. ECF No. 16 at 2 (Plaintiff "did not notify BHI that she moved to Wisconsin until after she began working for BHI"). She began her employment for the Bicycle Defendants several days after signing the offer letter on May 30, 2021. ECF No. 15 at 4. At one point during the course of her employment, she filed a "Notice of Claim & Demand for Arbitration with JAMS, and asserted claims for unpaid wages under the Fair Labor Standards Act and under Wisconsin law." *Id*. at 5. She "pursued the Wage Claim through arbitration until Fall of 2022, when she requested and the arbitrator granted her request to withdraw her claims."[3] *Id*. Following the withdrawal of her claims from arbitration, Plaintiff filed the instant federal action on December 14, 2022. *Id*. The Bicycle Defendants terminated her employment on February 16, 2022, purportedly for "violating company policy." *Id*.; ECF No. 16 at 4. The Bicycle Defendants represent that Plaintiff has "declined to dismiss the lawsuit and has declined to arbitrate her claims." ECF No. 15 at 5–6. The Bicycle Defendants also represent that

---

Court's February 6, 2023 order granting the Bicycle Defendants' motion for leave to file facts in support of their motion. ECF Nos. 19, 11.

Plaintiff now argues that "on a motion to compel arbitration[,] Plaintiff had no obligation to confer as to facts with Defendants in advance of filing." ECF No. 20 at 5; ECF No. 26 at 4. The time to present this argument to the Court was during the briefing of the Bicycle Defendants' motion for leave to file facts. Plaintiff entirely failed to respond to that filing during its pendency. She has accordingly forfeited the right to complain of that presentation of facts now. *See* ECF No. 19 at 2 (noting that Plaintiff did not file any opposition to the motion and that the lack of opposition in and of itself was sufficient to justify granting it).

[3]The record indicates that Plaintiff withdrew her wage claim from arbitration because she had "fired her lawyers during the summer of 2022" and "did not want to participate in the arbitration process on her own." ECF No. 16 at 4.

Plaintiff "has only served" the Bicycle Defendants and has not served Defendant Ankit Gupta ("Gupta"). *Id.* at 6.

## 2. ARGUMENT AND ANALYSIS

The Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq.*, "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730–31 (7th Cir. 2005) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983)). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Id.* To further its purpose, "[t]he FAA . . . provides for stays of proceedings in federal district courts when an issue in the proceeding is referable to arbitration, § 3, and for orders compelling arbitration when one party has failed, neglected, or refused to comply with an arbitration agreement, § 4." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991). According to the FAA,

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

### 2.1 Applicability of the FAA

As an initial matter, Plaintiff argues that the FAA "does not apply to Plaintiff's employment agreement." ECF No. 20 at 5, n.5. And even if it did, she argues, Defendant Bicycle Health Medical Group PA cannot compel arbitration thereunder because it is "not a party to the employment

agreement between Plaintiff and Bicycle Health Inc."[4] *Id.* at 5. The Court will first address the former contention.[5]

In support of her argument that the FAA does not apply to her employment agreement, Plaintiff asserts that she is a "transportation worker" and that the FAA does "not apply to contracts for employment for seamen, railroad workers, or any other class of workers engaged in foreign or interstate commerce." *Id.* at 11; citing 9 U.S.C. § 1 ("[N]othing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."). Plaintiff acknowledges that what she refers to as a "transporter worker" is one who belongs to a class of workers who is engaged in transporting goods across state lines via the channels of interstate commerce." *Id.* at 12 (internal citation omitted). She professes to belong to that class of workers.

This argument lacks foundation in both law and basic common sense and is frankly ridiculous. The Supreme Court has instructed that Section 1 of the FAA is to be "afforded a narrow construction" and its scope must be "controlled and defined" by the work done by seamen and railroad workers.[6] *Cir. City v. Adams*, 532 U.S. 105, 115, 118 (2001). Plaintiff's argument entirely ignores these mandates.

---

[4]Plaintiff otherwise concedes, however, that "if the Federal Arbitration Act applies to her employment contract, the Court should compel arbitration, leaving to an arbitration to decide whether the arbitration provision is severable from the unlawful Misclassification Provision." ECF No. 20 at 11.

[5]The Court addresses the latter contention in Section 2.2.

[6]Specifically, the Supreme Court wrote that the residual clause of § 1 of the FAA "should be read to give effect to the terms 'seamen' and 'railroad employees.'" *Circuit City*, 532 U.S. at 115. Plaintiff's argument fails to do so. "[T]he location of the phrase 'any other class of workers engaged in . . . commerce' in a

Page 7 of 15
Case 2:22-cv-01509-JPS   Filed 03/31/23   Page 7 of 15   Document 28

Plaintiff worked for the Bicycle Defendants as a "remote Patient Intake Coordinator." ECF No. 15 at 4. The statement of facts, to which Plaintiff wholly failed to object or respond at the appropriate time, provides that "Plaintiff was not expected (and did not) physically travel across state lines as part of her work," and she "did not transport any goods across state lines." *Id.* at 6. Plaintiff's job, according to her complaint, entailed "working with prospective patients" and making "connections between patients or prospective patients and telemedicine providers." ECF No. 1 at 3.

Plaintiff asserts that she "delivered forms . . . through the channels of interstate commerce."[7] *Id*. To be very clear, Plaintiff performed the entirety of her job remotely, using a computer provided by her employer. *Id*. at 5. Plaintiff now attempts to compare herself to "a trucker," "a ramp supervisor for an airline," and a "parcel post distributor." ECF No. 20 at 12–14. The fact that these are the comparisons Plaintiff ultimately decided to go with, apparently having found nothing more analogous, is telling. *See* ECF No. 22 at 10 ("The cases Plaintiff relies upon demonstrate the glaring weakness of her 'transportation worker' theory").[8] As she would have it,

---

residual provision, after specific categories of workers have been enumerated, undermines any attempt to give the provision a sweeping, open-ended construction." *Id.* at 118.

[7]Moreover, according to the Bicycle Defendants, Plaintiff never actually "sent any attachments" of actual forms. Rather, she only ever sent links through which a form could be accessed. ECF No. 22 at 9, n.4; ECF No. 25 at 3 ("Martini was not responsible for directly sending forms to prospective patients. Instead, she would provide them only with a link which the prospective patient would then click and which took them to the intakeQ platform where they would complete the paperwork.").

[8]"[H]ad Plaintiff's work consisted of driving on highways to deliver enrollment forms to prospective patients located in other states, there would be no doubt that she was a transportation worker," Plaintiff argues. ECF No. 20 at 14. The essence of this argument seems to be that "had Plaintiff's job been different,

apparently, any employee who occasionally sends a document to another via the internet is in the business of transporting goods in interstate commerce and therefore constitutes a transportation worker. Plaintiff would apparently have the bulk of the modern working world excluded from the reach of the FAA. The argument is rejected.

### 2.2 Applicability of Arbitration Provision to Defendants

Having concluded that the FAA is applicable,[9] the Court continues its analysis. Typically, that analysis would proceed to evaluating the validity of the arbitration provision. "Under the [FAA], arbitration may be compelled if the following three elements are shown: [(1)] a written agreement to arbitrate, [(2)] a dispute within the scope of the arbitration agreement, and [(3)] a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus., Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). The Court need not delve into this discussion, however, since Plaintiff does not contest the arbitration provision's validity.[10]

---

the outcome of this analysis would have been different." Even assuming arguendo that it is true, it is helpful to no one.

[9] Having so concluded, the Court can disregard the sections of Plaintiff's brief that argue that there is "no Basis to Compel Arbitration under Wisconsin Law" and "no Basis to Compel Arbitration under Illinois Law" as moot. *See* ECF No. 20 at 17. Plaintiff so argues based on the proposition that just because "the Plaintiff cannot be compelled to arbitrate under the FAA does not foreclose the possibility that Plaintiff can be compelled to arbitrate under state law." *Id*. at 17. The Court has already determined that the FAA is applicable and may therefore compel arbitration, so there is no need to determine whether there is any basis to compel arbitration under state law. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 341 (2011) ("When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA.").

[10] As earlier noted, Plaintiff concedes that "if the Federal Arbitration Act applies to her employment contract, the Court should compel arbitration . . . ." ECF No. 20 at 11. This suggests that she concedes to the validity of the arbitration

What Plaintiff *does* contest is whether Gupta and Bicycle Health Medical Group PA can compel arbitration under the arbitration provision. She asserts that they cannot because they are not parties "to the employment agreement between Plaintiff and Bicycle Health Inc." ECF No. 20 at 5. In response, Defendants argue that "courts allow an alleged non-signatory employer to enforce an arbitration agreement with an employee under principles of third-party beneficiary, agency law, and direct benefits estoppel . . . ." ECF No. 22 at 2; *see also* ECF No. 14 at 15.

A "nonparty's right to enforce an arbitration agreement is governed by state law," and the FAA does not "alter background principles of state contract law regarding the scope of [arbitration] agreements," including the "question of who is bound by them." *O'Connor v. Ford Motor Co.*, No. 19-cv-5045, 2023 U.S. Dist. LEXIS 3340, at *10 (N.D. Ill. Jan. 9, 2023). "While the particulars vary by state, traditional principles' [sic] of state law generally allow a contract to be enforced by or against nonparties to the contract through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." *Id.* (internal citations omitted). For example, a "non-signatory may invoke the agreement when, 'under agency or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying arbitration agreement between the signatories be avoided.'" *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947

---

provision. This conclusion is bolstered by the fact that Plaintiff previously engaged in arbitration of her claims thereunder. *See* ECF No. 22 at 1 ("Plaintiff acknowledges that she entered into a valid and enforceable Arbitration Agreement . . . [and] does not dispute that she filed a Notice of Claim & Demand for Arbitration with JAMS in accordance with that Arbitration Agreement.").

(11th Cir. 1999). This is so because "[i]t would advance neither judicial economy nor the purposes of the [FAA] to permit [a party] to assert in a judicial forum claims ground upon its alleged relationship to [the opposing party] and allow it to disavow the relationship for purposes of arbitration, or to allow [the party] to defeat the effect of an arbitration agreement by joining a non-signatory as a party-plaintiff in its complaint." *In re Oil Spill by the "Amoco Cadiz" etc.*, 659 F.2d 789, 796 (7th Cir. 1981). That said, there is a "strong presumption against conferring contractual benefits on noncontracting third parties." *Marque Medicos Farnsworth, LLC v. Liberty Mut. Ins. Co.*, No. 1-16-3351, 117 N.E.3d 1155, ¶ 12 (Ill. App. Ct. 2018).

The parties agree that Illinois law applies to this issue. ECF No. 20 at 5–6. Defendants appear to primarily rely on the theory of agency. "Generally, under both federal and Illinois law, the existence and scope of an agency relationship are questions of fact." *Caligiuri v. First Colony Life Ins. Co.*, No. 1-00-1998, 742 N.E.2d 750, 800 (Ill. App. Ct. 2000). "Agency is a consensual, fiduciary relationship between two legal entities created by law, where the principal has the right to control the activities of the agent, and the agent has the power to conduct legal transactions in the name of the principal." *Id*. at 801.

In Plaintiff's complaint, Plaintiff expressly asserts that "[t]he operations of Bicycle Health Inc. and Bicycle Health Medical Group P.A. are sufficiently integrated, in that the two entities share common ownership, management, and control over human resources, and provided integrated services to their jointly shared patients, so that the Corporate Defendants combine to form a single employer." ECF No. 1 at 3–4. She goes on to assert that "Ankit Gupta is the founder of both corporate Defendants, and in that capacity is directly involved in the day to day operations of both

corporate Defendants . . . ." *Id*. at 4. She alleges further that "Guptka caused the corporate Defendants to have contact with Wisconsin," "caus[ed] the corporate Defendants to work with patients and telemedicine providers in Wisconsin," and "was involved in setting up Defendants['] system of compensation." *Id*. at 2.

Having so pleaded, Plaintiff cannot now "slough off that relationship at will" for purposes of avoiding arbitration. *See in re Oil Spill*, 659 F.2d at 796. Plaintiff has "assert[ed] in a judicial forum claims ground upon its alleged relationship" to these Defendants, and it would "advance neither judicial economy nor the purposes of the [FAA] . . . to allow [Plaintiff] to disavow the relationship for purposes of arbitration." *Id*. By Plaintiff's own pleadings, it appears that the relationship between Defendants is "so obviously intertwined that only by allowing the non-signatories to invoke arbitration would evisceration of the agreements be avoided." *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995, 1005 (N.D. Ill. 2001).

Plaintiff now attempts to contest this conclusion by essentially instructing the Court to disregard Plaintiff's own pleading. ECF No. 20 at 7 (asserting that the Court "can consider the entire employment agreement between Plaintiff and Bicycle Health, no matter what Plaintiff did or did not plead in her Complaint."). But Plaintiff cannot have it both ways—she cannot rely on what she has pleaded in order to maintain her claims against all Defendants in federal court, and simultaneously disown that which she has pleaded when it conveniences her to do so.[11]

---

[11]In a footnote, Plaintiff writes that "[t]o the extent the Court . . . finds that the allegations . . . of the Complaint could be material to determining whether Bicycle Health Medical Group is the same entity as Bicycle Health, it should grant

Page 12 of 15
Case 2:22-cv-01509-JPS   Filed 03/31/23   Page 12 of 15   Document 28

Her complaint asserts that Gupta has the right to control the activities of the Bicycle Defendants. She characterizes the Bicycle Defendants as constituting essentially a single employer. Moreover, additional record evidence similarly supports a finding of agency among and between Defendants. Gupta's supplemental declaration provides that he is "responsible for executing contracts on behalf of BHI," and that he "executed a Management Services Agreement" "by and between BHI and Bicycle Health Medical Group, P.A." ECF No. 24 at 1. Pursuant to this Agreement, Bicycle Health Inc. "manage[s] and administer[s] the non-clinical operations of [Bicycle Health Medical Group's] business" and "enters into contracts on [Bicycle Health Medical Group's] behalf." *Id*. at 2; *see also* ECF No. 24-1 at 1 (provision authorizing Bicycle Health Inc. to manage and administer the non-clinical operations of Bicycle Health Medical Group's business). The Agreement explicitly appoints Bicycle Health Inc. as an "exclusive and lawful agent" of Bicycle Health Medical Group. ECF No. 24-1 at 2, 20. It states further that Bicycle Health Inc., as agent for Bicycle Health Medical Group, will "have signing authority, along with [Bicycle Health Medical Group's] owner, on the Deposit Account." *Id*. at 20.

In light of the foregoing, the Court is satisfied that Defendants may compel Plaintiff to arbitrate her claims.

---

to Plaintiff leave to amend her complaint." ECF No. 20 at 8, n.6. The Court will not interpret this passing reference to amendment as a proper motion therefore. *See* Civ. L.R. 7(a). And in any event, it would appear that amending to remove these characterizations of Defendants would be futile, because Gupta's supplemental declaration at ECF No. 24 and the Management Services Agreement at ECF No. 24-1 similarly demonstrate an agency relationship.

### 3. CONCLUSION

In sum, the Court finds that the FAA is applicable and mandates arbitration in this matter as to all Defendants. The Court will, therefore, grant the Bicycle Defendants' motion and compel Plaintiff to arbitrate. Having so concluded, the Court must determine whether to stay or dismiss the case. Plaintiff seeks a stay, citing *Halim v. Great Gatsby's Auction Gallery, Inc.*, 516 F.3d 557, 561 (7th Cir. 2008) for the proposition that "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." Defendants cite a "judicially-created exception to this general rule," ECF No. 14 at 17, which indicates that "district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration." *Villalobos v. EZCorp, Inc.*, No. 12-cv-852-slc, 2013 U.S. Dist. LEXIS 97998, at *24 (W.D. Wis. July 12, 2013) (internal citation omitted). Since it appears that no issue will remain for the Court to address outside of arbitration, the Court will dismiss the case without prejudice. Should Plaintiff persuade the arbitrator that arbitration is not appropriate for some reason, she may return to the Court. Until then, Plaintiff must proceed with arbitration.

Accordingly,

**IT IS ORDERED** that Defendants' motion to compel arbitration, ECF No. 13, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's expedited motion to strike Defendants' reply or, alternatively, for leave to file a sur-reply, ECF No. 26, be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff is **COMPELLED** to arbitrate her claims in this action with Defendants; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED without prejudice**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 31st day of March, 2023.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge